UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| CARMELIA M. CORREIA, | * | |
| PERSONAL REPRESENTATIVE | * | |
| OF THE ESTATE OF PAUL A. | * | |
| CORREIA, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 1:16-cv-12408-ADB |
| | * | |
| THE TOWN OF WESTPORT, | * | |
| WESTPORT POLICE | * | |
| DEPARTMENT, TARA E. SOUZA, | * | |
| JOHN BELL, BARRY BEAULIEU, | * | |
| CHRISTOPHER MELLO, | * | |
| BRYAN MCCARTHY, | * | |
| ANTONIO CESTODIO, | * | |
| and KEITH PELLETIER, | * | |
| | * | |
| Defendants. | * | |

## MEMORANDUM AND ORDER ON MOTION TO DISMISS

BURROUGHS, D.J.

Plaintiff Carmela Correia ("Plaintiff"), as the personal representative of the estate of Paul

A. Correia ("Mr. Correia"), brings this action, under 42 U.S.C. § 1983 and Massachusetts state

law, against seven police officers in their official and individual capacities (the "Defendant

Officers"),[1] the Town of Westport ("Westport"), and the Westport Police Department ("WPD")

(collectively, "Defendants"), alleging federal and state constitutional violations, intentional torts,

gross negligence, and negligence. [ECF No. 1, Ex. A ("Compl.")]. In August 2016, Plaintiff filed

---

[1] The individual officers named are Officer Tara E. Souza, Lieutenant John Bell, Officer Barry
Beaulieu, Sargent Christopher Mello, Officer Bryan McCarthy, Sargent Antonio Cestodio, and
Chief Keith Pelletier.

the complaint in Massachusetts state court. On December 12, 2016, the Defendants filed a notice of removal in federal court. [ECF No. 1].

Currently before this Court are Defendants' Rule 12(b)(6) motion to dismiss for failure to state a claim as to all Defendants and Rule 12(b)(5) motion for failure to effectuate proper service as to Officer Souza. [ECF No. 7]. Plaintiff opposes the motion. [ECF No. 15]. For the reasons state below, the motion is <u>GRANTED IN PART AND DENIED IN PART</u> pursuant to Federal Rule of Civil Procedure 12(b)(6).[2]

## I.      FACTUAL ALLEGATIONS

On August 20, 2013, Mr. Correia, a forty-five year old mentally disabled man, was the operator of a vehicle traveling northbound on Gifford Road in Westport, Massachusetts. Compl. ¶ 15. Mr. Correia crossed a double yellow line, passing a police cruiser and two other vehicles while proceeding through a stop sign. <u>Id.</u> ¶ 16. Mr. Correia then made a right turn onto a road heading westbound. <u>Id.</u>

Observing this, Officer Souza turned on her emergency lights and siren and pursued Mr. Correia. <u>Id.</u> ¶ 17. Plaintiff claims that Officer Souza continued her pursuit despite being ordered to cease due to heavy traffic and the time of day. <u>Id.</u> ¶ 18. Mr. Correia subsequently struck at least one vehicle, and eventually came to a stop after striking a guardrail. <u>Id.</u> ¶ 19. Officer Souza

---

[2] Because the Court concludes <u>infra</u> that the complaint fails to state a § 1983 claim or any state law claims against Officer Souza, the Court need not address the Rule 12(b)(5) argument for failure to effectuate proper service. <u>See</u> <u>Mukherjee v. Blake</u>, No. 12-11381-FDS, 2013 WL 2299521, at *4 (D. Mass. May 24, 2013) (finding that, because plaintiff's complaint failed to state a claim upon which relief could be granted, issue of whether to extend time period for service was moot); <u>U.S. ex rel. Saltzman v. Textron Sys. Corp.</u>, No. 09-11985-RGS, 2011 WL 2414207, at *5 (D. Mass. June 9, 2011) (holding that, because the claim against defendant was dismissed under Rule 12(b)(6), question of whether plaintiff should be given additional time to perfect service was moot).

joined Officer Bell[3] where Mr. Correia's car came to rest. Id. ¶ 20. With firearms drawn, Officers

Bell and Souza instructed Mr. Correia to show his hands. Id. ¶ 21. Mr. Correia did not respond to

any verbal instruction. Id. ¶ 22. Officer Beaulieu arrived at the scene, threatened to use his taser

on Mr. Correia if he did not step out of the vehicle, and then used his taser on Mr. Correia

multiple times. Id. ¶¶ 23, 24.

Thereafter, Officers Mello, McCarthy, Cestodio, and Police Chief Pelletier arrived at the

scene. Id. ¶ 25. The officers[4] physically removed Mr. Correia from his vehicle and he was

transported by ambulance to Charlton Memorial Hospital ("Charlton"), where he was found to

have suffered a nose fracture and related contusions. Id. ¶¶ 26–28. Charlton also noted that Mr.

Correia was "hyperverbal," with "flight of ideas and grandiose speech." Id. ¶ 29. Mr. Correia

was transferred to Westport Police Station for booking and eventually to Bristol County House

of Corrections.[5] Id. ¶ 30.

## II.        CLAIMS FOR RELIEF

The complaint contains nine claims for relief, and names the Defendant Officers in their

individual capacities in Count I and in both their individual and official capacities in the

remaining counts. Id. ¶¶ 7–13, 32.

- Count I alleges a violation of § 11I of the Massachusetts Civil Rights Act ("MCRA")

  against the Defendant Officers. Id. ¶¶ 31–33.

- Counts II, III, and IV allege intentional torts (assault, battery, and intentional infliction of

  emotional distress, respectively) against the Defendant Officers. Id. ¶¶ 34–49.

---

[3] The complaint does not specify when Officer Bell arrived at the scene.
[4] The complaint does not specify which officers.
[5] The complaint does not specify why Mr. Correia was arrested.

- Counts V through VIII allege negligence and gross negligence against all Defendants. Id. ¶¶ 50–65.

- The final count, which is unnumbered, alleges a violation of the Eighth and Fourteenth Amendments by the Defendant Officers pursuant to 42 U.S.C. § 1983. Id. ¶¶ 66–67.

- Plaintiff seeks compensatory and punitive monetary damages, interest, costs, and attorneys' fees.

## III.       LEGAL STANDARD

On a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the Court must accept as true all well-pleaded facts, analyze those facts in the light most hospitable to the plaintiff's theory, and draw all reasonable inferences from those facts in favor of the plaintiff. U.S. ex rel. Hutcheson v. Blackstone Med., Inc., 647 F.3d 377, 383 (1st Cir. 2011). Although detailed factual allegations are not required, a pleading must set forth "more than labels and conclusions." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). A "formulaic recitation of the elements of a cause of action" is not enough. Id. To avoid dismissal, a complaint must set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008) (internal quotations and citation omitted). Further, the facts alleged, when taken together, must be sufficient to "state a claim to relief that is plausible on its face." A.G. ex rel. Maddox v. Elsevier, Inc., 732 F.3d 77, 80 (1st Cir. 2013) (quoting Twombly, 550 U.S. at 570).

The First Circuit has noted that "[t]he plausibility standard invites a two-step pavane." Id. "At the first step, the court 'must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).'" Id. (quoting Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012)). "At the second step,

the court must determine whether the remaining factual content allows a reasonable inference that the defendant is liable for the misconduct alleged." Id. (internal quotations and citation omitted). "The make-or-break standard . . . is that the combined allegations, taken as true, must state a plausible, not a merely conceivable, case for relief." Sepulveda-Villarini v. Dep't of Educ. of Puerto Rico, 628 F.3d 25, 29 (1st Cir. 2010). "Although evaluating the plausibility of a legal claim requires the reviewing court to draw on its judicial experience and common sense, the court may not disregard properly pled factual allegations, even if it strikes a savvy judge that actual proof of those facts is improbable." Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011) (internal quotations and citation omitted).

## IV.     DISCUSSION

### A.     The § 1983 Claim

#### i.     The § 1983 Claim Against the Defendant Officers In Their Individual Capacities

Section 1983 provides a cause of action for violations of the U.S. Constitution and federal law. See 42 U.S.C. § 1983; Graham v. Connor, 490 U.S. 386, 394 (1989). Section 1983 states, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity . . . .

42 U.S.C. § 1983. To succeed under § 1983, a plaintiff must show that "the challenged conduct [is] attributable to a person acting under color of state law" and that "the conduct . . . worked a denial of rights secured by the Constitution or by federal law." Soto v. Flores, 103 F.3d 1056,

1061 (1st Cir. 1997). With respect to the first prong, Defendants do not contest that Plaintiff adequately alleged state action, and the Court thus turns to the second prong.

With respect to the second prong, Plaintiff asserts that the Defendant Officers violated Mr. Correia's Eighth and Fourteenth Amendment rights by using excessive force. Compl. ¶ 67. Because Mr. Correia alleges harm during an investigatory stop and arrest, however, his excessive force claim is properly analyzed under the Fourth Amendment standard, rather than the Eighth or Fourteenth. Graham, 490 U.S. at 394 ("Where . . . the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right 'to be secure in their persons . . . against unreasonable . . . seizures' of the person." (quoting U.S. Const. amend IV)); Miranda-Rivera v. Toledo-Davila, 813 F.3d 64, 71 (1st Cir. 2016) (applying Fourth Amendment standard, rather than Fourteenth Amendment, where excessive force allegedly occurred while plaintiff was transported to a police station and then a jail cell). Reviewing the claim under the Fourth Amendment, the § 1983 excessive force claim must be dismissed as against all the Defendant Officers except Officer Beaulieu. See Johnson v. City of Shelby, Miss., 135 S. Ct. 346, 346 (2014) ("Federal pleading rules call for 'a short and plain statement of the claim showing that the pleader is entitled to relief,' they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." (quoting Fed. Rule Civ. Proc. 8(a)(2)).

To prevail on an excessive force claim under the Fourth Amendment, a Plaintiff must show that "the defendant employed force that was unreasonable under all the circumstances." Correia v. Feeney, 620 F.3d 9, 12 (1st Cir. 2010) (quoting Morelli v. Webster, 552 F.3d 12, 23 (1st Cir. 2009)). This standard requires an inquiry into the circumstances of the particular case to

determine if a reasonable officer would have thought the particular use of force was reasonable, including (1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight. Graham, 490 U.S. at 387, 396. It has long been recognized that police officers have a right to use some degree of physical coercion or threat of such coercion to make an arrest. Graham, 490 U.S. at 396; Terry v. Ohio, 392 U.S. 1, 22–27 (1968). Courts apply an objective reasonableness standard to determine whether force was unconstitutionally excessive that accounts for the fact that "police officers are often forced to make split-second judgments . . . about the amount of force that is necessary in a particular situation." Graham, 490 U.S. at 387.

The facts, as alleged, do not allow for a reasonable inference that Officers Souza, Bell, Mello, McCarthy, Cestodio, or Pelletier used excessive force against Mr. Correia in violation of his Fourth Amendment rights. The complaint alleges that Officer Souza pursued Mr. Correia's vehicle after observing a traffic violation and that the other officers reported to the scene after Mr. Correia's vehicle struck at least one other vehicle and a guardrail. Although Plaintiff alleges that Mr. Correia suffered injuries, the complaint does not set forth any facts as to how Officers Souza, Bell, Mello, McCarthy, Cestodio, or Pelletier removed Mr. Correia from his vehicle or otherwise could have caused him harm, beyond asserting the legal conclusion that "the officers" used "unreasonable force." Compl. ¶ 26. Thus, the excessive force claim under the Fourth Amendment against Officers Souza, Bell, Mello, McCarthy, Cestodio, and Pelletier is "too meager, vague, or conclusory to remove the possibility of relief from the realm of mere

conjecture." See S.E.C. v. Tambone, 597 F.3d 436, 442 (1st Cir. 2010) (citing Twombly, 550 U.S. at 555).[6]

With respect to Officer Beaulieu, Plaintiff alleges that he tasered Mr. Correia multiple times after Correia failed to respond to the officers' orders, following his collision with the guardrail. The Court infers that Mr. Correia's lack of responsiveness while seated in a stopped vehicle, following a collision, plausibly indicated that he did not pose an immediate threat. At this stage, these allegations are sufficient to state a plausible excessive force claim against Officer Beaulieu in his individual capacity. See Parker v. Gerrish, 547 F.3d 1, 3 (1st Cir. 2008) (upholding jury verdict finding officer guilty of excessive force where officer tasered plaintiff who had generally complied with all police orders and was non-threatening).

Plaintiff also argues that the Defendant Officers are liable under § 1983 for failing to intervene during the alleged use of excessive force on Mr. Correia. Compl. ¶ 53. "An officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held liable under section 1983 for his nonfeasance." Davis v. Rennie, 264 F.3d 86, 102 (1st Cir. 2001) (quoting Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 207 (1st Cir. 1990) (per curiam)). To prevail on a § 1983 claim for failure to intervene, a plaintiff must show that a defendant "1) was present when excessive force was used, 2) observed the use of excessive force, 3) was in a position to realistically prevent that force and 4) had sufficient time to do so." Walker v. Jackson, 56 F. Supp. 3d 89, 96 (D. Mass. 2014).

---

[6] With respect to the intentional tort counts, at the very end of the complaint and divorced from any factual context, the complaint states that the Defendant Officers "hit[] . . . and otherwise beat[] Paul," see, e.g., Compl. ¶ 38, but fails to plead sufficient facts to allow the Court to reasonably infer when and where these actions took place in light of the factual narrative alleged earlier in the complaint and to determine whether or not this plausibly constituted excessive force.

"Mere presence," however, "at the scene without more, does not" constitute a violation for failure to intervene. <u>Calvi v. Knox Cty.</u>, 470 F.3d 422, 428 (1st Cir. 2006).

Plaintiff does not allege and the Court cannot reasonably infer that Officers Mello, McCarthy, Cestodio, or Pelletier were present when Officer Beaulieu used his taser. <u>See</u> Compl. ¶¶ 24, 25. Although Officers Bell and Souza were allegedly at the scene when Officer Beaulieu used his taser, <u>id.</u> ¶ 20, Plaintiff fails to allege any facts that indicate that Officers Bell and Souza observed the use of the taser, or were in a position to realistically prevent its use or to otherwise support a failure to intervene claim against Officer Beaulieu. <u>See</u> <u>Walker</u>, 56 F. Supp. 3d at 96. Thus, the facts as alleged are insufficient to state a plausible claim for relief based on a failure to intervene theory of liability, and the § 1983 claims based on a failure to intervene are dismissed as to all Defendants.

The Court recognizes that the discovery process might reveal additional information that could support a § 1983 claim against some or all of these officers in addition to Officer Beaulieu. Nonetheless, the Court dismisses the § 1983 claims against Officers Souza, Bell, Mello, McCarthy, Cestodio, and Pelletier given the paucity of the allegations against them in the complaint, but with the understanding that the dismissal is without prejudice pending further discovery.

### ii.        Qualified Immunity

Defendants argue that Officer Beaulieu is entitled to qualified immunity because his alleged conduct did not violate a clearly established statutory or constitutional right, which a reasonable person would have known about. Plaintiff responds that Officer Beaulieu is not entitled to qualified immunity because the constitutional prohibition against a police officer's use of excessive force has long been clearly established.

Qualified immunity protects public officials, in their individual capacity, "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); see also White v. Pauly, 137 S.Ct. 548, 551 (2017) (similar); M.M.R.-Z. ex rel. Ramirez-Senda v. Puerto Rico, 528 F.3d 9, 12–13 (1st Cir. 2008) (noting that "qualified immunity does not apply to official capacity claims"). The qualified immunity doctrine balances two interests: (1) "the need to hold public officials accountable when they exercise power irresponsibly" and (2) "the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 555 U.S. 223, 231 (2009).

To determine whether a defendant is entitled to qualified immunity, the Court undertakes a two-step inquiry to determine: "(1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was 'clearly established' at the time of the defendant's alleged violation." Maldonado v. Fontanes, 568 F.3d 263, 269 (1st Cir. 2009) (citing Pearson, 555 U.S. at 231). At the motion to dismiss stage, "[u]nless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985); see also Brosseau v. Haugen, 543 U.S. 194, 198 (2004) ("If the law at that time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation.").

Satisfying the "clearly established" prong requires that: (1) the right's contours be "sufficiently clear" and (2) "a reasonable official would understand that what he is doing violates that right." Hope v. Pelzer, 536 U.S. 730, 739 (2002). Although Plaintiff correctly points out that

the constitutional prohibition against the use of excessive force has long been clearly established, see Morelli, 552 F.3d at 23–24, the Supreme Court instructs "that 'clearly established law' should not be defined 'at a high level of generality.'" White, 137 S.Ct. at 551 (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 742 (2011)); City & County of San Francisco v. Sheehan, 135 S. Ct. 1765, 1776 (2015) ("Qualified immunity is no immunity at all if 'clearly established' law can simply be defined as the right to be free from unreasonable searches and seizures."); Mullinex v. Luna, 136 S. Ct. 305, 308 (2015) (holding that the "dispositive question is 'whether the violative nature of the *particular* conduct is clearly established'" (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 742 (2011))); Decotiis v. Whittemore, 635 F.3d 22, 36–37 (1st Cir. 2011) (explaining that second element of second prong "require[es] a legal determination" but "is highly fact specific").

The Court looks to Supreme Court and federal appellate case law that existed prior to August 20, 2013, the date of the incident involving Plaintiff, to determine what the "clearly established" law was at the time of the incident. See Alfano v. Lynch, 847 F.3d 71, 78 (1st Cir. 2017) (stating that "[f]ederal courts of appeals typically look only to precedents from the United States Supreme Court, federal appellate courts, and the highest court of the state in which a case arises to gauge whether a particular right is clearly established"); see also Eves v. LePage, 842 F.3d 133, 141 (1st Cir. 2016) (holding that qualified immunity defense applied where "[n]o Supreme Court case or circuit case clearly forbade" the conduct at issue).

Depending on the particular factual circumstances, the First Circuit and other courts have held that the use of a taser may constitute unconstitutionally excessive force. See Parker v. Gerrish, 547 F.3d 1, 3 (1st Cir. 2008); Brown v. City of Golden Valley, 574 F.3d 491 (8th Cir. 2009); Wakefield v. City of Escondido, Nos. 05-56769, 05-56809, 2007 WL 2141457 (9th Cir. 2007); Mattos v. Agarano, 661 F.3d 433 (9th Cir. 2011); Bryan v. McPherson, 590 F.3d 767 (9th

Cir. 2009); Meyers v. Baltimore Cty., Md., 713 F.3d 723, 726 (4th Cir. 2013); Kijowski v. City of Niles, 372 F. App'x 595 (6th Cir. 2010); Landis v. Baker, 297 F. App'x 453 (6th Cir. 2008); Oliver v. Fiorino, 586 F.3d 898 (11th Cir. 2009). But courts have also held that the use of a taser in certain situations is not unconstitutionally unreasonable force. See, e.g., Zivojinovich v. Barner, 525 F.3d 1059 (11th Cir. 2008); Draper v. Reynolds, 369 F.3d 1270 (11th Cir. 2004); Cook v. City of Bella Villa, 582 F.3d 840 (8th Cir. 2009); McKenney v. Harrison, 635 F.3d 354 (8th Cir. 2011); Buckley v. Haddock, 292 Fed. App'x 791 (11th Cir. 2008).

In Parker, 547 F.3d at 3, the First Circuit upheld a jury finding that a defendant used excessive force on a plaintiff when he deployed a taser during an arrest for intoxicated driving. It concluded that the verdict was sufficiently supported where there was evidence that the plaintiff was not resisting arrest, complied with all police orders, and where the reason for the officers' interaction with the plaintiff—driving while intoxicated—did not in and of itself indicate that the plaintiff was a danger to an arresting officer.

Drawing all reasonable inferences in Plaintiff's favor, including that Mr. Correia did not appear to threaten the officers after he crashed the car, it is plausible that Officer Beaulieu violated a clearly established constitutional right and is not entitled to qualified immunity. He may raise the defense again, however, when the factual record has been more sufficiently developed. Accordingly, the motion is denied without prejudice to renew, pending the development of a more complete factual record, with respect to the § 1983 claim against Officer Beaulieu in his individual capacity.

### iii. The § 1983 Claims Against the Defendant Officers In Their Official Capacities

Plaintiff also alleges a § 1983 claim against the Defendant Officers in their official capacities. In their briefs, the Defendants only argue that the § 1983 claims should be dismissed because there was no excessive force and the claims are barred by qualified immunity. At the July 13, 2017 scheduling conference, the Court told the parties that it was inclined to dismiss the count because Plaintiff had not adequately pled a § 1983 Monell claim for municipal liability. Plaintiff conceded on the record that the complaint did not adequately plead the claim.

In sum, a municipality can be liable for a constitutional violation under § 1983 "only if the violation occurs pursuant to an official policy or custom," Welch v. Ciampa, 542 F.3d 927, 941 (1st Cir. 2008), "whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy," Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). Executing the "policy or custom" must be the "'moving force' behind that constitutional violation." Young v. City of Providence ex rel. Napolitano, 404 F.3d 4, 25 (1st Cir. 2005) (quoting Monell, 436 U.S. at 694). "Further, the Supreme Court has imposed two additional requirements: 1) that the municipal policy or custom actually have caused the plaintiff's injury, and 2) that the municipality possessed the requisite level of fault, which is generally labeled in these sorts of cases as 'deliberate indifference.'" Young, 404 F.3d at 26.

Here, Plaintiff has failed to allege sufficient facts in the complaint to support a plausible § 1983 Monell claim. In particular, the complaint lacks any allegations whatsoever that would allow the Court to reasonably infer that Westport and the WPD were deliberately indifferent to a policy or custom that caused the Defendant Officers to violate the Constitution prior to the incident at issue. Accordingly, and consistent with the position of the parties at the status

conference, the motion to dismiss is granted with respect to the § 1983 claim against the Defendant Officers in their official capacities.

### B.   State Law Claims

#### i.   The MCRA Claim Against the Defendant Officers (Count I)

Plaintiff brings an excessive force claim under Massachusetts state law against the Defendant Officers only in their individual capacities. Compl. ¶ 32. Plaintiff alleges that the officers violated § 11I of the MCRA by interfering with and depriving Mr. Correia of his exercise and enjoyment of his civil rights as secured by Massachusetts law. Id. ¶ 33. Defendants argue that qualified immunity bars the MCRA claims against the Defendant Officers. [ECF No. 8 at 7–8].

The MCRA is the "state analog" to § 1983 and "provides a cause of action for an individual whose rights under the constitution or laws of either the United States or . . . Massachusetts have been interfered with by 'threats, intimidation or coercion.'" Raiche v. Pietroski, 623 F.3d 30, 40 (1st Cir. 2010) (citing Mass. Gen. L. ch. 12, §§ 11H, I). To establish a claim under the MCRA, a plaintiff must prove that "(1) his exercise or enjoyment of rights secured by the Constitution or laws of either the United States or of the Commonwealth, (2) has been interfered with, or attempted to be interfered with . . . and (3) that the interference or attempted interference was by threats, intimidation or coercion." Williams v. O'Brien, 936 N.E.2d 1, 4 (Mass. Ct. App. 2010). The MCRA is to be read in harmony with 42 U.S.C. § 1983, except that, unlike the federal statute, the MCRA protects against private action as well as state action, and requires "threats, intimidation or coercion." See Bell v. Mazza, 474 N.E.2d 1111, 1114 (Mass. 1985) (holding "plaintiff need not allege 'State action' to state a cause of action under G.L. c. 12, § 11I"); Kennie v. Nat. Res. Dep't of Dennis, 866 N.E.2d 983, 987 (Mass. App.

Ct. 2007) (stating that to prove an MCRA violation, plaintiff must show that defendant not only interfered with plaintiff's rights but also that defendant did so "by threats, intimidation or coercion" (citing Mass. Gen. L. ch. 12, § 11H)).

A threat is the "intentional exertion of pressure to make another fearful or apprehensive of injury or harm;" intimidation is "putting [another] in fear for the purpose of compelling or deterring conduct;" and coercion is "the application of another of such force, either physical or moral, as to constrain him to do against his will something he would not otherwise have done." Ayasli v. Armstrong, 780 N.E.2d 926, 935 (Mass. App. Ct. 2002) (internal quotations omitted). Courts apply a "reasonable person" standard to determine what constitutes "threats, intimidation or coercion." Planned Parenthood League of Mass., Inc. v. Blake, 631 N.E.2d 985, 991 (Mass. 1994). Additionally, MCRA claims are subject to the same standard of qualified immunity for police officers that is used for claims asserted under § 1983. Raiche, 623 F.3d at 40.

Because Plaintiff fails to assert facts sufficient to support a plausible excessive force claim against Officers Souza, Bell, Mello, McCarthy, Cestodio, and Pelletier, see supra, the MCRA claim is dismissed as to these officers without prejudice pending further discovery. With respect to Officer Beaulieu, because Plaintiff asserts sufficient facts to allege a plausible excessive force claim and Defendants do not argue that the complaint fails to allege the threat, intimidation, or coercion requirement for MCRA purposes, the motion to dismiss is denied with respect to the MCRA claim (Count I) as against Officer Beaulieu, but is otherwise granted with respect to Count I.

> ### ii. State Law Negligence and Gross Negligence Claims Against Westport and WPD (Counts VI and VIII)

Plaintiff brings a negligence claim against Westport and WPD, alleging that they breached a duty to train and supervise officers in the use of reasonable force, the proper way to

intervene to stop the use of excessive force, and the handling of mentally disabled individuals. Compl. ¶ 58. Plaintiff also brings a gross negligence claim against Westport and WPD, alleging that they willfully, wantonly, and/or recklessly caused the death of Mr. Correia by failing to implement, monitor, and/or enforce policies and/or customs with regards to the proper use of force and the handling of mentally disabled individuals. Id. ¶ 64. Defendants argue that Westport and WPD are immune from suit for negligence and gross negligence claims under § 10(j) of the Massachusetts Torts Claim Act ("MTCA").

The MTCA authorizes recovery for the "injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any public employee while acting in the scope of his office or employment." Mass. Gen. L. ch. 258, § 2. Section 10(j), however, provides immunity to public employers for:

> any claim based on an act or failure to act to prevent or diminish the harmful consequences of a condition or situation, including the violent or tortious conduct of a third person, which is not originally caused by the public employer or any other person acting on behalf of the public employer.

Mass. Gen. L. ch. 258, § 10(j). The Massachusetts Supreme Judicial Court ("SJC") has "construed the 'original cause' language to mean an affirmative act (not a failure to act) by a public employer that creates the 'condition or situation' that results in harm inflicted by a third party." Kent v. Com., 771 N.E.2d 770, 775 (Mass. 2002) (quoting Brum v. Dartmouth, 704 N.E.2d at 1147) (emphasis added). The SJC also clarified that this affirmative act "must have materially contributed to creating the specific 'condition or situation' that resulted in the harm." Kent., 771 N.E.2d at 775–76. The mere failure to act cannot give rise to liability for negligence under the MTCA. See id. at 772; see also Ward v. City of Boston, 367 F. Supp. 2d 7, 14 (D. Mass. 2005).

Here, Plaintiff alleges that Westport and the WPD are liable for negligence (Count VI) because they failed to adequately train and supervise the Defendant Officers on the proper use of reasonable force, intervention to stop the use of excessive force, or the handling of interactions with mentally disabled individuals, Compl. ¶ 58, and for gross negligence (Count VIII) for failure to implement, monitor, and/or enforce certain policies and/or customs regarding how to handle mentally disabled individuals, id. ¶ 64.

Because Plaintiff does not contend that any affirmative act underlies the negligence claims against Westport and the WPD, his claims are barred by § 10(j) immunity. See Chao v. Ballista, No. 07-10934-NG, 2008 WL 5423206, at *3 (D. Mass. Oct. 24, 2008) (holding claim based on negligent supervision and training, but not negligent assignment of employee, barred by § 10(j)); Pettengill v. Curtis, 584 F. Supp. 2d 348, 366 (D. Mass. 2008) (noting that "[a] claim that [the public employer] negligently trained or supervised [the employee] would be a 'claim[ ] based on the failure to prevent or mitigate a harm, rather than participation in the initial injury-causing circumstance,'" and is therefore barred by § 10(j) (quoting Armstrong v. Lamy, 938 F. Supp. 1018, 1044 (D. Mass. 1996))); Doe v. D'Agostino, 367 F. Supp. 2d 157, 177 (D. Mass. 2005) (holding that negligence claims based on school officials' failure to supervise employee is barred by § 10(j)); Ward, 367 F. Supp. 2d at 15 (holding that claims for negligent hiring, training, and/or supervision of police officer are barred by § 10(j)); Armstrong, 938 F. Supp. at 1043–44 (holding that § 10(j) bars municipal liability for negligence based on failure to train and supervise employee); see also Doe v. Old Rochester Reg'l Sch. Dist., 56 F.Supp.2d 114, 120–21 (D. Mass.1999) (no liability for municipality's failure to prevent or mitigate its employee's conduct); Canty v. Old Roch. Reg'l Sch. Dist., 54 F. Supp. 2d 66 (D. Mass. 1999) (same). Given that the paucity of the complaint does not allow the Court to infer any underlying affirmative act,

the Court holds that § 10(j) bars the negligence claim here.[7] Based on the same reasoning, § 10(j) immunity also extends to the gross negligence claim, which is premised entirely on Westport and the WPD's failure to act. Accordingly, Counts VI and VIII are dismissed.[8]

### iii. State Law Negligence and Gross Negligence Claims against the Defendant Officers (Counts V and VII)

Plaintiff alleges separate negligence and gross negligence claims against the Defendant Officers in their individual and official capacities based on the use of excessive force. Specifically, Plaintiff asserts that the Defendant Officers breached a duty to citizens to refrain from using excessive force and a duty to intervene and stop the use of excessive force by other officers. Compl. ¶¶ 51–54. Additionally, Plaintiff alleges that the Defendant Officers were grossly negligent when they willfully, wantonly, and/or recklessly caused the pain and suffering of Mr. Correia. Id. ¶ 61. Defendants argue the officers are not personally liable for any acts of negligence or gross negligence undertaken within the scope of their employment, which is

---

[7] The Court does not intend this analysis to foreclose the possibility that there may be exceptions, which Plaintiff has not argued here, to the general rule that § 10(j) bars claims based on negligent supervision or training that turn on the particular factual circumstances of the case. See, e.g., Mass. Gen. Laws ch. 258, § 10(j)(1)–(4). It also notes that the SJC has not yet determined the scope of § 10(j). See LaPierre v. City of Lawrence, No. 11-12039-RWZ, 2013 WL 1829120, at *4 (D. Mass. May 1, 2013) (noting that SJC has not settled issue of § 10(j)'s applicability "to a public employer's failure to prevent a tort by one of its own employees," and "disagree[ing] with the previous cases finding that section 10(j) bars a claim that a public employer negligently supervised and trained an employee"); see also Kennedy v. Town Of Billerica, 617 F.3d 520, 533 (1st Cir. 2010) (stating that "Massachusetts cases have only allowed supervisory negligence claims against municipalities where the municipality knew or should have known about an underlying, identifiable tort," relying on two pre-§ 10(j) cases, and failing to address applicability of § 10(j)). Nonetheless, the complaint does not sufficiently allege that Westport plausibly knew or should have known that the Defendants Officers were committing any torts.

[8] Plaintiff's discussion of negligence and gross negligence as against Westport and the WPD omits any discussion of § 10(j). See [ECF No. 15 at 7–9]. To the extent that Plaintiff intended the negligence and gross negligence claims against Wesport and the WPD to be § 1983 claims, the Court addressed the issue supra.

immunized under § 2 of the MTCA. Plaintiff does not counter this argument with respect to individual officer liability.

Under § 2 of the MTCA, a public employee is not personally liable for "his negligent or wrongful act or omission while acting within the scope of his office or employment." Mass. Gen. L. ch. 258, § 2. The SJC has interpreted § 2 to also preclude personal liability for gross negligence. See McNamara v. Honeyman, 546 N.E.2d 139, 141 (Mass. 1989) (holding that a "public employee is immune from a claim arising out of gross negligence because such a claim qualifies as a 'negligent or wrongful act or omission' under § 2").

The complaint specifically alleges that the Defendant Officers were acting within the scope of their employment, Compl. ¶¶ 7–13, and there is no basis for the Court to infer that any of the officers' negligent conduct occurred outside the scope of employment. Thus, § 2 of the MTCA immunizes the Defendant Officers from personal liability for negligence or gross negligence. Although § 2 protects a public employee from personal liability for negligent conduct within the scope of his employment, the public employer can remain liable. See McNamara, 546 N.E.2d at 141 ("If a defendant is a public employee and his conduct constitutes simple or ordinary negligence, § 2 of chapter 258 clearly applies and the Commonwealth, as a public employer, is liable for the harm and the employee is not liable."); see also Patino v. City of Revere, No. 13-11114-FDS, 2014 WL 202760, at *9 (D. Mass. Jan. 16, 2014) ("[T]he City may be liable for the negligence of its employees if they were acting within the scope of their employment.").

The Court already explained supra that the complaint inadequately pleads excessive force with respect to all Defendant Officers except Officer Beaulieu. Accordingly, Counts V and VII as against the Defendant Officers in their individual capacities and as against Officers Souza,

Bell, Mello, McCarthy, Cestodio, and Pelletier in their official capacities are dismissed, but Counts VI and VII survive as against Officer Beaulieu in his official capacity.

### iv. State Law Intentional Tort Claims Against the Defendant Officers (Counts II–IV)

Plaintiff brings three intentional tort claims against the Defendant Officers, in both their individual and official capacities: assault (Count II), battery (Count III), and intentional infliction of emotional distress (Count IV). Compl. ¶¶ 34–49. Defendants contend that the Defendant Officers are immune from suit for intentional torts under § 10(c) of the MTCA. In her brief, Plaintiff contends that the complaint can be fairly read as implicating the Defendant Officers in their individual capacities and "should hereinafter be read to allege claims against Defendants solely in their individual capacities." [ECF No. 15 at 7].

Section 10(c) of the MTCA bars municipal liability for "any claim arising out of an intentional tort." Swanset Dev. Corp. v. City of Taunton, 668 N.E.2d 333, 338 (Mass. 1996) (quoting Mass. Gen. Laws ch. 258, § 10(c)). "Bringing a claim against a Town employee in his or her official capacity equates to bringing a claim against the entity." Saltzman v. Town of Hanson, 935 F. Supp. 2d 328, 350 (D. Mass. 2013). Section 10 of the MTCA, however, "provides for exemptions from operation of [MTCA] § 2 . . . [and] states in pertinent part that a public employee shall not be immune from 'any claim arising out of an intentional tort'" McNamara, 546 N.E.2d at 142; see also Spring v. Geriatric Authority of Holyoke, 475 N.E.2d 727, 735 (Mass. 1985) ("[w]hile public employers . . . may not be held liable for intentional torts committed by their employees, the employees may be personally liable for any harm they have caused"). Accordingly, "[p]olice officers are immune from suit for such intentional torts in their official capacity, but not when sued in their individual capacities." Carter-Galica v. Town of Warren, No. 09-P-882, 2010 WL 2160313, at *1 (Mass. App. Ct. 2010); see also Howcroft v.

City of Peabody, 747 N.E.2d 729, 747 (Mass. App. Ct. 2001) (affirming dismissal of intentional tort claims against police officers in their official capacities, under § 10(c) of the MTCA, but reversing dismissal with respect to individual capacity claims).

Contrary to the Defendants' assertions, the complaint does name the Defendant Officers in their individual capacities in Counts II, III, and IV. See Compl. ¶¶ 7–13, 32. Moreover, Defendants themselves raise the qualified immunity defense in their brief, which is not available to officers sued under § 1983 in their official capacities, see M.M.R.-Z. ex rel. Ramirez-Senda, 528 F.3d at 13, and weighs in favor of viewing the complaint as asserting claims against the officers in their individual capacities, see Powell v. Alexander, 391 F.3d 1, 22 (1st Cir. 2004) (adopting "course of proceedings" test by which "courts may examine 'the substance of the pleadings and the course of proceedings in order to determine whether the suit is for individual or official liability'" (quoting Pride v. Does, 997 F.2d 712, 715 (10th Cir. 1993)); see also Duhani v. Town of Grafton, 52 F. Supp. 3d 176, 184 (D. Mass. 2014) ("The factors which would favor treating this as an individual capacity suit are that the case is in its early stages, Defendants' have pleaded a qualified immunity defense, and the parties have briefed the issue of qualified immunity."). Thus, the intentional torts claims against the Defendant Officers in their individual capacities are not barred by § 10(c).

Under Massachusetts law, plaintiffs may maintain "assault and battery claims against police officers who use excessive force in conducting an arrest." Raiche, 623 F.3d at 40. Reasonable force, however, is a valid defense to assault and battery claims against a police officer. Id. "Where a plaintiff alleges both a § 1983 excessive force claim and common law claims for assault and battery, [the] determination of the reasonableness of the force used under § 1983 controls [the] determination of the reasonableness of the force used under the common

law assault and battery claims." Id. Similarly, IIED claims must fail if the officers' conduct was objectively reasonable under the circumstances. Dean v. City of Worcester, 924 F.2d 364, 369 (1st Cir. 1991).

Here, because the assault, battery, and IIED claims are based entirely on allegations of excessive force and where the complaint fails to plausibly allege the use of unreasonable force, the assault, battery, and IIED claims must be dismissed. See Watson v. Perez, 168 F. Supp. 3d 365, 372 (D. Mass. 2016) (dismissing assault, battery, and IIED claims because "there was no unreasonable force exerted against [the plaintiff]"). Accordingly, the intentional torts claims (Counts II, III, and IV) are dismissed as against Officers Souza, Bell, Mello, McCarthy, Cestodio, and Pelletier, but the assault and battery claims survive as against Officer Beaulieu in his individual capacity. See Raiche, 623 F.3d at 40 ("We have already held that Pietroski used excessive force; therefore, we must uphold the jury's verdict that Pietroski committed assault and battery."). Moreover, Defendants do not argue that an excessive force claim, without more, cannot constitute IIED, and the Court therefore permits this claim to go forward as to Officer Beaulieu in his individual capacity.

## V.    CONCLUSION

For the reasons explained above, Defendants' motion to dismiss [ECF No. 7] is GRANTED IN PART AND DENIED IN PART. Specifically, the motion is DENIED with respect to:

- the § 1983 (unnumbered), MCRA (Count I), assault (Count II), battery (Count III), and IIED (Count IV) claims against Officer Beaulieu in his individual capacity; and,

- the negligence (Count V) and gross negligence (Count VII) claims against Officer Beaulieu in his official capacity.[9]

The motion is <u>GRANTED</u> with respect to all remaining claims, and they are dismissed without prejudice (except the individual capacity claims in Counts V and VII, which are dismissed with prejudice).

**So Ordered.**

Date: September 7, 2017

_____
ALLISON D. BURROUGHS
U.S. DISTRICT COURT JUDGE

---

[9] The Court understands Counts V and VII as against Officer Beaulieu in his official capacity to constitute counts against Westport and the WPD based on Officer Beaulieu's allegedly negligent actions. Plaintiff may amend the complaint to assert Counts V and VII directly against Wesport and the WPD.